STEPHEN D. MILLER, Adm'r, &c., *v.* GREENWOOD LEFLORE et al.

1. CONTRACT.—M., as administrator of a deceased person, sold property of his intestate, which, by the terms of the sale, was to be paid for in four equal annual instalments. L. became a purchaser, and executed his four notes, each for one-fourth of the amount of his bid, and bearing the same date, but falling due at different times, according to the terms of the sale : *Held,* that each of these notes, in a controversy respecting the application of partial payments made by L. to M., must be regarded as separate and independent contracts.
2. PAYMENT : APPROPRIATION OF.—When several promissory notes or bonds, have been executed on the same day, and by the same maker, and payable to the same person, but falling due at different times, the law will apply partial payments made by the debtor to the creditor, after they have all become due, to the satisfaction of the principal and interest of the note first falling due, in preference to the interest on the others.

IN error to the Circuit Court of Carroll county. Hon. E. G. Henry, judge.

The facts will be found in the opinion of the court and briefs of counsel.

*J. Z. George,* for plaintiff in error.

Stephen D. Miller, the plaintiff in error, as administrator of his father, sold the property of his intestate, under an order of the Probate Court of Carroll county, on a credit of one, two, three and four years ; and at the sale, Greenwood Leflore, one of the defendants in error, became the purchaser of a considerable amount of property, for the sum of four thousand dollars. To secure the payment of this debt, (which, according to the terms of the sale, was payable in four equal annual instalments,) he executed his

four several bonds, with John D. Leflore, his surety, falling due, as before stated.

The first bond was paid about the time of its maturity, and taken up by the debtor. No other payments were made, until after the three remaining bonds had become over due. Various voluntary partial payments were made on the debt, but were not specially appropriated or applied by either party, to any one of the several bonds before-mentioned. Other partial payments were also coerced from Leflore, by process of garnishment, and of course these were not specifically applied by either party.

. The questions arising upon the above state of facts, by agreement of parties, relate exclusively to the application which the law will make of these partial payments.

It is insisted on behalf of the defendants in error, that these partial payments, both voluntary and coerced, should be applied first, to the payment of the interest due on the bond first falling due, and then to the principal of that bond, and then to the interest and principal of the second bond falling due, and then to the interest and principal of the last one.

The plaintiff in error, insists that these various partial payments, having all been made, after all the several bonds or instalments had become over due, and were bearing interest, should be applied first, to the extinguishment of the interest, due on all of them, at the date of such payments, and then to the principal of any one of the bonds, or rateably on all.

The principle on which the defendants in error base their claim for the application of the partial payments, in the mode insisted on by them, is, that such application is most beneficial to the debtor; and they contend that this rule has been recognized by this court, in the cases of *Harmer* v. *Kirkwood*, 3 Cushm. 95; *Poindexter* v. *La Roche*, 7 S. & M. 699; and that they are conclusive of the question involved in the case at bar.

I do not deny the existence of the rule contended for, but insist that it has no application to the question now in controversy.

There are two rules recognized by the laws of this State, in reference to the appropriation of partial payments, which are based upon directly opposite principles; one prefers the interest of the

debtor; the other the interest of the creditor.   There is such a repugnancy between them, that the only mode in which to steer clear of difficulties, and remove apparent contradictions is, by confining each to that class of cases to which it has heretofore been applied.   In this way, both may stand, and to this extent I recognize the existence and binding force of each.

The rule, which, in the appropriation of partial payments, prefers the interest of the debtor, and which was sanctioned in the cases before cited, has no application to a contest, as between *principal* and *interest;* it has reference solely to a contest between two principal debts, separate and distinct from each other.   It has never been applied, except where there has been two or more principal debts of unequal dignity, as bond or simple contract, or where they are unequally onerous, as mortgage and simple contract; or where one bears interest, or a high rate of interest, and the other bears none, or a less rate of interest.   In this class of cases, the controversy being between *principal* debts, and not between principal on the one hand and interest on the other, the law says that the application shall be made to that debt, the payment of which will be most beneficial to the debtor.   The question of interest can never arise in this class of cases.   The principal in each debt drawing after it, as an incident, the interest due thereon.   The case of *Poindexter* v. *La Roche,* was in relation to a mortgage and a simple contract debt; the appropriation was directed to be made to the mortgage debt.   The case of *Harmar* v. *Kirkwood,* was a contest between the judgment debtor and his creditor, in relation to the application of partial payments.   There were two judgments—one bearing interest, and the other not—and the court decided that the payments should be first applied to the satisfaction of the interest, and then to the judgment which bore interest; and lastly, to the judgment which did not bear interest.

Both these cases come within the principle, as contended for, by me.

The several bonds given for the instalments by Leflore, were created at the same time.   They were all of the same dignity; all secured by the same statutory mortgage; all bore interest, and at the same rate, and all were equally onerous to the debtor, after they became due; and consequently, as between the several bonds

where the *payments are proposed to be applied exclusively to one in preference to another*, it is not of the least importance to the debtor or creditor which should be paid first. For instance, if Leflore should contend, as he does contend, that the payments should be applied exclusively to the bond first falling due, and Miller should agree to apply them exclusively to the bond falling due second in order of time, the court will perceive, that it is of no conceivable interest to either in which way the appropriation should be made. This conclusively brings the case out of the rule recognized in *Harmer* v. *Kirkwood*, and *Poindexter* v. *La Roche.* But when the contest is, as between the *interest on all the bonds*, on the one hand, and the interest and principal of *any one of them* on the other, it then becomes manifest, that it is beneficial to the debtor to make the application to the interest and principal of any one of them, in preference to the interest on all, and then to the principal of one, or rateably, to the principal on all. It is therefore to be remarked, that this question of preferring the debtor to the creditor, or *vice versa*, cannot arise at all in this case, as between one bond and another, but only when the question is between interest on the one side and principal on the other. And whenever this happens, the statutory rule is the sole arbiter, and decides the question in favor of the creditor. The Supreme Court of Kentucky, in the case of *Steele* v. *Taylor*, 4 Dana, R. 445, 450, has sanctioned this rule in a case less favorable to the creditor than the one at bar.

I insist that this question is settled by our statute. Hutch. Dig. 643; whether the several bonds be regarded as fractions of, and altogether constituting one entire debt or demand; or whether they be regarded as distinct and separate obligations, having no connection with each other. It will not be controverted that, if the first supposition be true, the statute applies; it is equally manifest that it governs the case, even if they be regarded as several debts.

The language of the statute is, "When partial payments are made on *bonds, contracts, &c.*," "which bear interest," &c., "the payments shall be credited on the *interest* then due," &c. The phraseology of the statute being in the plural number, appropri-

ately includes cases where there are several bonds, contracts, &c., between the parties.

I have heretofore been considering this case as if the bonds given for the instalments were to be regarded as separate and distinct liabilities, instead of parts of the same debt. But I think it can be made manifest that they are to be considered, at least so far as this case is concerned, as constituting an entire debt, and of course, as coming within the provisions of the statute regulating the application of partial payments. The reasoning which supports this view, seems to me to be clear and conclusive.

Leflore, by his bid at the sale, did not contract four several debts, one due at the end of one year, and one in two, and one in three, and one in four years, independent and distinct, each having a single consideration for itself. By the payment, or the securing of any one of the instalments, as the law directs, he would not have been entitled to the possession of any portion of the consideration—that is, the property bought. His right to demand any, or all of the property from the administrator, depended upon his compliance with the terms of the sale, in giving security for the whole of the instalments. And again, the several instalments are fractional parts of the same transaction. They were executed at the same time, for the same consideration, *in solido*, and were secured by the same statutory mortgage which bound all and every portion of the property for the payment of all the debt. They were made by the same parties, and were payable to the same party. A defence existing at the time, to one, would have been equally good, as to all. They were fractional parts of the same debt, and not distinct and separate obligations. So, in whatever light we regard them, we must consider them as one and the same, and not distinct and independent transactions.

If the administrator had taken one bond payable in instalments, the form of the debt would have been as its substance is, and there could be no controversy that the statute applies. Did the taking of separate bonds change or alter the transaction in the least? To hold that it did, would be sacrificing the substance to the form, the essence to the shadow. In a case where the bond was payable by instalments, the statutory rule was applied by the court. *Jones* v. *Bond*, 8 S. & M. 368.

The foregoing applies equally to the voluntary and coerced partial payments. But the rule is, if possible, stronger in our favor, in relation to the involuntary payments. 1 Hare & Wallace, Lead. Cases, 300, and cases there cited, particularly 10 Pick. 129; 24 Pick. 270.

The application of the payments, as contended for by plaintiff in error, is the most just and equitable. The debtor was in default, and by this means both principal and interest became due. Shall he be permitted now to take. advantage of his own negligence and fault, and deprive the creditor of interest, when, if he had paid the debt, according to his obligation, he would have received or made it?

*Helm* and *Wright*, for defendants in error.

These are the facts in this case, viz: Greenwood Leflore, some years since, purchased, at the administrator's sale of the effects of Stephen D. Miller, deceased, property amounting to the sum of four thousand dollars, for which he executed his four several bonds, falling due in one, two, three, and four years after date. After the maturity of the first bond, various payments were made by Leflore, which were applied to his first bond, until the same was fully discharged; several of these payments, however, it must be borne in mind, which were applied to the payment of the first bond, were made after the second bond had become due, for the second bond matured before the first was paid. After the maturity of all the bonds, various payments were made, none of which were specially appropriated, except the sum of two hundred dollars, which was credited upon the second by the administrator. Several partial payments were also made by Leflore, to the creditors of Miller's estate, upon garnishment process, of which no special application was made, but were merely entered by the administrator in his annual settlements with the Probate Court. The only question before the court is, how shall these payments be appropriated?

We insist that they shall be applied to the several bonds in their order; that is to apply the payment to the discharge of the second bond, (the first being paid,) with the interest due thereon, before

any application is made to the third, and so on, in the order of their date.

1. Because this mode seems to have been intended by the parties, and is clearly to be inferred from the application of the payments wholly to the first bond, after the second become due, and to the second, those made after they were all due. If this was their intention, it must govern; for it is declared to be the paramount rule, that whenever the intention or understanding of the parties before or at the time, can be inferred, or implied from any circumstances, it shall prevail. 1 Hare & Wallace, Leading Cases, 292; 13 Vermont, 15, 17; 12 Ib. 246; 1 J. J. Marshall, 583; 15 Conn. 438; 14 N. Hamp. 431, 440. In the appropriation of voluntary payments, the court acts alone upon the presumption of the parties' intention. 18 Vermont, 451.

The appropriation of the payments to the first note, exclusively, after the second fell due, by the administrator, was a tacit admission that this was the manner in which all subsequent payments would be applied, and furnished Leflore good reason to believe that such would be the case, and that the necessity of a specific application, on his part, was superseded. The facts exclude the idea of waiver by defendant, and if he has not waived the right, his plea of payment filed, makes the appropriation. *Dent* v. *State Bank*, 12 Alabama, 275.

In the absence of any express or implied intention of the parties, as to the method of appropriation, the law adopts the rule for which we contend, viz: that payments made upon several items of indebtedness, will be applied to those first falling due. Now, the principal of the note maturing first, was due before the interest on the next note, and was entitled to be paid first. 4 Harris & Johns. 351; *United States* v. *Kirkpatrick*, 9 Wheat. 720; 7 Ib. 13; 10 Conn. 175; 1 Bay, 497. These notes were distinct items of indebtedness, for they could have been assigned.

2. Because, where it devolves upon the law to make application of payments, such application will be made in the way most beneficial to the debtor. I am aware that the dicta of several eminent jurists may be arrayed against this position; but a careful examination of all the decisions, both English and American, will satisfy any one that no other satisfactory rule can be extracted from

Miller *v.* Leflore et al.

them. From the date of the decisions in *Heyward* v. *Lomax,* 1 Vernon, 23, to that of *Hamer* v. *Kirkwood,* decided by this court, this principle has been recognized; and it is the only principle upon which the apparent conflicting decisions can be reconciled. It is the failure on the part of counsel for plaintiff to keep this in view, that has led him to believe that two rules were recognized in this State, in reference to the application of partial payments, based, as he says, upon decidedly opposite principles. Now if, as he says, there are two rules, I hesitate not to say, one is wrong. This seeming repugnance, I think, can be reconciled by observing closely the character and course of the adjudications upon this subject. It will be seen, upon examination, that in almost every case, in which the courts have professed to incline in favor of the creditor, by applying the payments, so as to advance his interest, that in these cases it mattered not very much to the debtor to which of the debts the payments were applied; one was not more oppressive than the other; for instance, if the debtor held two claims against him, one secured and the other not, the court would, of course, apply the payments to the debt not secured, thus benefiting the creditor, without oppressing the debtor, deeming it equitable to extinguish, first, the debt, the security of which is most precarious. *Blantin* v. *Rice,* 5 Monroe, 253; *Fields* v. *Hollands,* 6 Conn. 8. In none of these cases, does it appear that the application in favor of the creditor, works a hardship, or was in any wise detrimental to the debtor. On the other hand, let us look at the cases where the applications have been made in favor of the debtor, which are here referred to, viz: 2 Harris & Johns. 402; 9 Cowan, 747, 764, 772; 1 Harris & Johns. 754-755; 12 Vermont, 246; 1 Bibb, 334-335; 12 Modern Reports, 557; 10 S. & M. 113; 3 Cush. 95; 7 S. & M. 747. These cases proceed upon the principle that the application is made for the benefit of the debtor,. and not upon the ground that it was a contract between two principal debts.

The courts surely did not intend that their inclination in favor of the debtor should be based upon the fact, that (what counsel term) two principal debts were before the court. It is by contrasting these debts, that the interest of the debtor was made manifest, which interest operates. The debts do not *ipso facto* affect

the mind of the court, but they make apparent the interest of the debtor which does. The contest is between the interest of the creditor on the one hand, and the interest of the debtor, (who is more or less in the creditor's power,) on the other. The bare fact of one debt being upon mortgage, and the other upon simple contract, does not incline the court in favor of the debtor, but these serve only to show what and where the debtor's interest is, which does operate on the court. Let us take, for illustration, the case of *Hamer* v. *Kirkwood.* Hamer had recovered judgments against Kirkwood, which were affirmed by this court with damages; various payments had been made. Hamer insisted that these payments should be applied to the judgment for damages, and put to the original judgments and interest. This court decided that the payments should be applied first to the original judgments and interest; why? because it was the debt bearing interest, and consequently to the interest of the debtor. Now there were not two principal debts before the court; for the judgment for damages was as much an incident of the original debt as the interest, both being authorized by the statute, both emanating from the same source and having the same object, viz : penalty for delay.

But granting all the force to the position of counsel that he claims, we would ask, are we not included in the rule laid down by counsel—are not these principal debts? they are separate and distinct obligations, the interest accruing upon each being distinct and incident alone to each?

This is proved by the fact that they could have been assigned, and further, that if one of the older bonds had been barred by the Statute of Limitations, the others would have been valid liabilities, whereas, were they an unit, they would all be barred, nor could they have been separately assigned.

To illustrate further the rule of appropriation, when, and in whose power it is, let us take the following example :—suppose that the second of these bonds were barred by the Statute of Limitations, and Leflore should come before the court, contending that the payments made should be applied to the junior bonds which were not barred, would not counsel contend, and rightly, that the appropriation should be made to the second bond? and would not the court thus apply them on the ground, that it would be of ad-

vantage to the creditor, and could work no hardship or injustice to the debtor? Again, suppose that a rateable application of the payments (for which plaintiff now contends) would not pay off this bond as barred, would it not be insisted that the appropriations should be so made, as that this should be paid, even if it deprived the remaining bonds of their proportion? And this would be right, and would be only within the rule for which we contend, viz: that the court will aid the creditor when their action will not be burdensome to the debtor. We would now ask, if any other rule than the one we now contend for, would not be harsh to Leflore? For he will be compelled to pay a large amount of interest, (for this involves some $7000 or $8000,) which he did not, nor had he any right to anticipate having to pay. If there has been any fault, the plaintiff was to blame; he could have, had he been diligent, put this question beyond doubt. His previous conduct induced Leflore to believe that the method adopted at the commencement, would be pursued. He could have made these bonds one debt by judgment, had he chosen. And will this court now interpose to supply his want of diligence? Counsel say that Leflore was in default; this is not manifest, for the indulgence may have been granted by plaintiff. No suit was brought by plaintiff evidencing otherwise, and this present suit would never have arisen, had there been no controversy about the appropriation of the payments. If we are right in our views of applying the payments, we owe nothing; the debt has been paid, and that too without suit for any part of it. The payments made to creditors upon garnishment are not to be considered in the light of payments made upon suit immediately between the parties. This was a matter over which neither Leflore nor plaintiff had any control. Leflore might have been garnished, and still, in truth, may not have been in default.

FISHER, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Carroll county.

The facts are as follows:—the defendant, Greenwood Leflore, on the 12th day of October, 1839, purchased of the plaintiff, as administrator of the estate of Stephen D. Miller, deceased, property to the amount of $4000, on a credit of one, two, three and

four years, for which he gave his four notes, for the sum of $1000 each, payable as above stated. The note first falling due is the one upon which this suit was brought. Sundry payments appear from time to time to have been made; part of which being applied to the note sued on, it was considered as paid, and given up to the defendants; the others are still in the hands of the plaintiff, and whether paid or not, must depend upon the manner in which the payments are applied. The defendants pleaded payment, and the court instructed the jury, that, under the agreed state of facts, the note was paid; and the jury found a verdict accordingly.

Waiving an objection which might, perhaps, be urged against the instruction, that the court charged upon the weight of the testimony, it is certainly in other respects correct. The fact that both parties treated the note as paid, and that it was accordingly delivered up to the defendant, must be treated as conclusive evidence of payment.

But aside from the agreement which must be presumed from the conduct of the parties, we are of opinion that the question is equally clear under the law which must govern the case. Interest, it appears, had accrued upon the several notes, before all the payments were made; and the question presented by the record is, whether, when a payment was made, it should have been applied first to the interest which had accrued upon all the notes, or whether it should have been applied first to the interest accrued on the note first falling due, and the balance of such payment to the principal of said note, and so on, in the order in which the notes were payable. The four notes, although originating in the same transaction, must be treated as four several and distinct contracts, for otherwise no suit could be maintained on any one of the notes until they all became due. Besides, they could have been indorsed to different persons, who could have maintained several actions thereon; whereas, if all the notes constituted but one contract, one of the notes could not, in a legal sense, be indorsed so as to invest the indorsee with the legal title, as part of a contract cannot, at law, be indorsed so as to pass the legal title. The question then being settled, that each note was a separate contract, the case falls within a familiar rule, that contracts must be performed in the order in which they were made, that is to say, the defendants

undertook to pay, and the plaintiff to receive payment of the first note, before payment of the second note, and so on, in this order, until the last note should be paid.  Suppose suit had been commenced on the first note when it became due, the measure of damages would have been the principal and interest accrued when the judgment should have been rendered.  The same rule would have applied to the other notes, if suits had been commenced when they severally fell due.  The question would have been in each case the measure of damages; and whatever would have been the measure of damages in four several suits, ought to be the measure of damages if the notes were consolidated in one suit, or if paid without a suit, for the question is in each case the same—what was the debtor bound to pay, and what was the creditor legally entitled to receive?  The answer would be, the principal of each note, and the interest accrued on each, in consequence of the failure to make prompt payment.

We are therefore of opinion that the judgment ought to be affirmed.